**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Candice Drescher, | No. CV-19-00096-TUC-RM (LCK) |
| Plaintiff, | **ORDER** |
| v. | |
| Bracco Diagnostics Incorporated, et al., | |
| Defendants. | |

On January 31, 2020, Magistrate Judge Lynette C. Kimmins issued a Report and Recommendation (Doc. 57) recommending that this Court grant Defendants' Motions to Dismiss (Docs. 46, 47, 48) and grant Plaintiff leave to amend the operative Complaint. The Report and Recommendation ("R&R") further recommended denying Defendants' first round of Motions to Dismiss (Docs. 15, 16, 20) as moot because they were based on the original Complaint, which was superseded by the First Amended Complaint (Doc. 35). Plaintiff filed an Objection (Doc. 58) and Defendants responded (Doc. 59). For the following reasons, the Court will grant the Motions to Dismiss and adopt Judge Kimmins' Report and Recommendation.

## I.     Background

Plaintiff filed her original Complaint on February 25, 2019. (Doc. 1.) Each group of Defendants filed a Motion to Dismiss the Complaint. (Docs. 15, 16, 20.) Defendants

also moved to transfer the case to a judge with related cases, but the request was denied. (Docs. 33, 53.) Plaintiff filed her Amended Complaint (FAC) on July 29, 2019. (Doc. 35.) Defendants then filed the Motions to Dismiss which are the subject of Judge Kimmins' Report and Recommendation. (Docs. 46, 47, 48.)

The Amended Complaint alleges that Plaintiff was injected with the linear gadolinium-based contrast agent (GBCA) "OptiMARK," which is produced and sold by Defendants Guerbet and Mallinckrodt, prior to a January 19, 2013 magnetic resonance imaging (MRI) procedure.[1] (Doc. 35 ¶ 2.) Plaintiff further alleges that she was injected with linear GBCA MultiHance, which is produced and sold by Defendant Bracco, prior to MRIs on August 11, 2015 and November 8, 2016. (*Id.*) At the time of the GBCA injections, Plaintiff had normal kidney function. (*Id.* ¶ 43.) Plaintiff alleges that a urine test in May 2017 revealed that her body had retained high levels of gadolinium, a toxic heavy metal, in her organs, bone, and skin and that it had crossed the blood-brain barrier and deposited in her brain. (*Id.* ¶ 4.) The retention of gadolinium caused numerous symptoms, including joint pain, fatigue, cognitive problems, loss of mobility, muscle weakness, chronic pain, fibrosis, and skin changes. (*Id.*) Plaintiff claims that her doctors have diagnosed and treated her for "gadolinium toxicity." (*Id.*)

Beginning in 2007, the Food and Drug Administration (FDA) required all GBCA labels to add a "black box" warning that GBCAs increased the risk of Nephrogenic Systemic Fibrosis (NSF), a disease that causes fibrosis of skin and organs, for patients with reduced renal function. (*Id.* ¶¶ 74,77.) The Amended Complaint cites numerous studies documenting gadolinium retention in patients with normal kidney function. (*Id.* ¶¶ 47, 70, 86, 88.) It also cites patient reports of adverse events (AERs) after gadolinium exposure despite normal kidney function, between 2007 and 2016. (*Id.* ¶¶ 47, 70, 85.) In December 2017, the FDA mandated a new warning for all GBCAs for MRIs that gadolinium may be retained in patients' bodies, including the brain, for months to years

---

[1] Gadolinium is a heavy metal that functions as a contrast agent. Contrast agents are injected into the body before an MRI procedure to enhance the imaging. *Sabol v. Bayer Healthcare Pharm., Inc.*, No. 18 CIV. 11169 (VM), 2020 WL 705170, at *1 (S.D.N.Y. Feb. 12, 2020).

after receiving the drug. (*Id.* ¶ 111.) The FDA required GBCA manufacturers to issue a patient medication guide and to conduct further studies to assess the safety of GBCAs. (*Id.*)

Plaintiff alleges that Defendants knew or should have known of the adverse consequences of gadolinium retention in people, like her, with normal kidney function. (*Id.* ¶ 50.) Plaintiff alleges that the Defendant manufacturers falsely promised the gadolinium would leave her body without harming her. (*Id.* ¶¶ 2, 6, 9.) Plaintiff further alleges that Defendants should have sold macrocyclic GBCAs, which are less likely to be retained in the body, instead of linear GBCAs. (*Id.* ¶¶ 84, 89, 95.) Plaintiff alleges that Defendants limited the warnings regarding gadolinium retention to the subset of patients with abnormal kidney function. (*Id.* ¶ 114.) Plaintiff alleges that Defendants are liable based on: (1) strict product liability: inadequate warning; (2) strict product liability: defective design; and (3) negligence due to inadequate warning and defective design.

In response to Plaintiff's FAC, Defendants filed Motions to Dismiss, arguing that the FAC should be dismissed for the following reasons: untimely service; preemption; failure to plead causation; failure to plead foreseeable risk; punitive damages are barred; and the allegations fail to state a claim and violate Fed. R. Civ. P. 8. (Docs. 46, 47, 48.)

## II. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is only appropriate if the complaint's factual

allegations, together with all reasonable inferences drawn in the plaintiff's favor, fail to state a plausible claim for relief. *Id*. at 678; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (all factual allegations in the complaint must be accepted as true). However, allegations that "contradict matters properly subject to judicial notice or by exhibit" need not be accepted as true. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts need not accept as true allegations that "contradict matters properly subject to judicial notice or by exhibit" or that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") "[A] court may disregard allegations of the complaint that are contradicted by attached exhibits." *Castle v. Eurofresh, Inc.*, No. CV09-8114-PCT-MHMDKD, 2010 WL 797138, at *3 (D. Ariz. Mar. 8, 2010). "[W]here scientific studies are cited and thus incorporated into the complaint, and where those studies simply do not support the allegations, the Court may find that the deficiencies … go to the very heart of the plausibility standard under *Iqbal*." *Sabol v. Bayer Healthcare Pharm., Inc.*, No. 18 CIV. 11169 (VM), 2020 WL 705170, at *12 (S.D.N.Y. Feb. 12, 2020).

While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011) (quoting *Twombly*, 550 U.S. at 570). The allegations must "raise a reasonable expectation that discovery will reveal [material] evidence" and thus "allow the court to draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id*. at 46. The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is not enough to establish a claim, and legal conclusions are not entitled to an assumption of truth. *Id*. at 679.

In resolving a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, "the

Court's task is to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sabol*, 2020 WL 705170, at *6 (internal citations and quotations omitted). Within the context of the facts stated in the complaint or documents attached to or incorporated into the complaint by reference, the Court must "draw reasonable inferences and resolve any doubts in favor of the non-moving party." *Id.*

### III. Report and Recommendation

The Report and Recommendation recommends dismissing Plaintiff's FAC with leave to amend. The R&R addresses each of Defendants' arguments for dismissal as if raised by all Defendants. *See Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Bornstein v. Trans Union LLC*, No. CV-18-04773-PHX-JJT, 2019 WL 2372020, at *2 (D. Ariz. June 5, 2019) (applying dismissal argument of one defendant to all defendants because claims were identical).

The R&R first addresses Defendants' argument that the FAC should be dismissed for failure to timely serve. The Magistrate Judge found that because Plaintiffs served Defendants shortly after the deadline, because Plaintiff's claim would be barred by the statute of limitations if dismissed, and because Defendants did not show prejudice resulting from the two-week delay in service, dismissal based on improper service is not warranted. (Doc. 57 at 4.)

Next, the R&R addresses Defendants' argument that Plaintiff's inadequate warning claim and design defect claim, sounding in strict liability and negligence, are preempted by the FDA's regulatory scheme. (*Id.* at 5.) The R&R finds that Plaintiff's inadequate warning claim is preempted because it did not state a plausible claim that the Defendant manufacturers could have changed their labels under the Changes Being Affected, or "CBE," regulation, 21 C.F.R. § 314.70(c)(6)(iii). (*Id.* at 10.) The R&R

further finds that Plaintiff's design defect claim is preempted because Plaintiff's proposed change to Defendants' linear GBCA product would constitute a major change under applicable state regulations and would therefore require obtaining prior FDA approval, and a label alteration to ameliorate the purported risk was also not possible without FDA approval. (*Id*. at 14.)

The R&R goes on to address Defendants' argument that Plaintiff failed to plead that Defendants knew, or should have known, that their linear GBCA products posed an unreasonable danger to patients with normal kidney function and finds that Plaintiff's attached exhibits demonstrate that "the FDA concluded, more than a year after Plaintiff last was exposed to gadolinium, that no GBCAs were unreasonably dangerous and there was no known adverse health effect from gadolinium retention." (*Id*. at 17.) Therefore, the R&R rejected as conclusory Plaintiff's allegation that there was a known risk of harm that Defendants could and should have foreseen prior to 2016. (*Id*.)

Finally, the R&R addresses Plaintiff's request for punitive damages. (*Id*.) Defendants contend that punitive damages are barred by Arizona state law. (*Id*.) The R&R finds that Plaintiff is barred from seeking punitive damages because she did not plead that Defendants' products were non-compliant with their FDA-approved manufacturing or labeling. (*Id*. at 18.)

Because the R&R found that Plaintiff's claims should be dismissed in their entirety based upon preemption and failure to plead foreseeability, the R&R does not address Defendants' other arguments for dismissal. (*Id*.) The R&R recommends granting Plaintiff leave to amend the complaint only if she possesses additional factual allegations that allow her to state at least one claim for relief. (*Id*.) The R&R finds that, at a minimum, Plaintiff must include allegations of: (1) reasonable evidence of a causal association of harm (relevant to preemption and causation necessary to state a claim for failure to warn or design defect); (2) a foreseeable risk of harm to patients with normal kidney function from Defendants' linear GBCA products (necessary to state a claim for failure to warn or design defect); and (3) Defendants' ability under federal law to

redesign their GBCA products to comply with state law (necessary to state a claim for design defect). (*Id*. at 19.)

   **IV.   Objection 1: The Magistrate Judge failed to properly apply the Motion to Dismiss Standard.**

   Plaintiff objects that the magistrate judge failed to properly apply the Motion to Dismiss standard by failing to draw all reasonable inferences in Plaintiff's favor. (Doc. 58 at 2-4, Doc. 57 at 7-9.) Plaintiff contends that the R&R failed to draw "important inferences" in Plaintiff's favor but does not specify what those inferences should have been. (*Id*. at 4.) Defendants respond that the R&R applied the appropriate legal standard by rejecting Plaintiff's conclusory allegations that are contradicted by the FDA statements and findings set forth in the exhibits attached to the complaint. (Doc. 59 at 3.)

   On de novo review, the Court finds that the magistrate judge correctly applied the legal standard for motions to dismiss. Citing *Sprewell*, 255 F.3d at 988, the R&R finds that "Plaintiff's conclusory allegations of causation … are contradicted by the supporting facts and studies included in the Amended Complaint and its attachments" and that there was no "reasonable evidence of a causal association of harm for patients with normal renal function." (Doc. 57 at 9, 17.) Drawing all reasonable inferences in Plaintiff's favor, the Court finds no basis in the record to reach a different conclusion. The information provided by Plaintiff as attachments to the FAC does not provide a basis for a reasonable inference that there exists a causal connection between GBCAs and risk of harm to patients with normal kidney function. Rather, the information provided by Plaintiff shows that the FDA found, after inquiry and studies, that it could not establish a causal association between adverse health effects reported by patients with normal kidney function and gadolinium retention. (*See* Doc. 35, Exs. C; D at 6, 22; E at 6; F at 5, 19; H at 3.) Furthermore, Plaintiff's factual allegations, supported by the information in the attached exhibits, do not raise a right to relief beyond a speculative level or state a facially plausible claim. *Twombly*, 550 U.S. at 545, 570. The magistrate judge, in recommending granting the Motions to Dismiss based upon the factual allegations in and

exhibits attached to the FAC, correctly applied the legal standard for motions to dismiss. *See Sprewell* 266 F.3d at 988 (courts need not accept as true allegations that "contradict matters properly subject to judicial notice or by exhibit" or that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences.")

**V.    Objection 2: The Magistrate Judge erred in finding that the FDA found no causal association between GBCAs and adverse health effects.**

Plaintiff objects to the magistrate judge's finding that the FDA found no causal association between GBCAs and adverse health effects in patients with normal kidney function. (*Id*. at 4-6, Doc. 57 at 9-10, 17.) Plaintiff contends that the FDA requirement that there be "reasonable evidence of a causal association between the drug and the adverse event" in order to include an adverse event in a drug warning, in conjunction with the fact that the FDA ordered "actions to alert health care professionals and patients about gadolinium retention after an MRI using a GBCA," provides evidence of a causal relationship between the use of Defendants' linear GBCA product and gadolinium retention in patients with normal kidney function. (*Id*. at 5-6.) Defendants respond that the FDA has expressly confirmed that there is no established causal association between GBCAs and adverse health effects in patients with normal renal function. (Doc. 59 at 4.) Defendants point to the FDA's warnings in 2017 and 2018 in which the FDA concluded that no causal association had been established. (*Id*. at 5.)

The Court finds that Plaintiff's objection misconstrues the R&R's findings and the standard under which a warning of a causal relationship between GBCAs and adverse health effects in patients with normal kidney function would be required. First, Plaintiff's objection ignores the R&R's specific findings regarding the FDA's explicit findings that gadolinium retention has not been directly linked to adverse health effects in patients with normal kidney function. (Doc. 57 at 9-10.) The R&R cites to the FDA's label change in 2018, which stated that "adverse events involving multiple organ systems have been reported in patients with normal renal function without an established causal link to gadolinium retention." (*Id*. at 9.) Prior to that, the FDA issued a warning in 2017 stating

that a causal association between reports of adverse events involving multiple organ systems in patients with normal kidney function and gadolinium retention "could not be established." (*Id*. at 16.) Plaintiff's objection does not address these findings or explain how her argument that reasonable evidence of a causal association between the drug and the adverse event exists is valid considering the FDA's explicit findings to the contrary. In other words, Plaintiff's argument that there is reasonable evidence of a causal association between adverse health effects in people with normal kidney function and gadolinium retention is plainly contradicted by the FDA warnings.

Plaintiff further argues that "it is incorrect to believe that the FDA ruled out linear GBCAs as a cause for the adverse events reported by patients." (Doc. 58 at 5.) However, the R&R does not make this finding nor does the FDA mandate warnings for a causal association that has not been ruled out. Rather, the FDA guidance requires "reasonable evidence of a causal association between the drug and the adverse event." (*Id*.) Plaintiff argues that the language in the 2018 label change meets this standard but neglects to address the FDA's finding that no causal link was established, and instead asks the Court to draw an inference that is both unsupported and explicitly contradicted by the record before it. (*See* Doc. 57 at 9-10, 16-17.) Accordingly, the Court finds that the magistrate judge did not err in finding that the FDA found no causal association between GBCAs and adverse health effects in patients with normal renal function.

## VI.    Objection 3: The Magistrate Judge erred in finding that Plaintiff's Design Defect claim fails under Restatement (Third) of Torts § 6(c).

Plaintiff objects to the magistrate judge's finding that her design defect claims fail under Restatement (Third) of Torts § 6(c) because Defendants would have had to change their design. (*Id*. at 6-7, Doc. 57 at 13-14.) Plaintiff objects that the design defect claims were properly pled because Defendants should have sold the safer macrocyclic GBCA product instead of the linear GBCA products, which have defective designs. (*Id*. at 6.) Plaintiff further contends that she has alleged sufficient facts to support a claim consistent with Restatement (Third) of Torts § 6(c). (*Id*.)

Plaintiff's objection does not address the magistrate judge's analysis regarding preemption of the design defect claims. (Doc. 57 at 11-14.) Plaintiff does not argue and cites to no authority supporting the contention that the magistrate judge incorrectly applied the preemption framework to Plaintiff's design defect claim pursuant to *Mutual Pharm Co., Inc. v. Bartlett*, 570 U.S. 472 (2013). The R&R finds that Plaintiff's design defect claims are preempted by federal law because Defendants were unable to alter the formulation of the linear GBCA drug after its approval by the FDA. (Doc. 57 at 13); *see* 21 C.F.R. § 314.70(b)(2)(i) ("Once a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the qualitative or quantitative formulation of the drug product, including active ingredients[.]"). Plaintiff alleges that Defendants should have sold macrocyclic GBCAs, which are less likely to be retained in the body, instead of linear GBCAs. However, the active ingredients and chemical structures in each of these drugs are different and therefore such a change would require FDA approval. (Doc. 17 at 13-14.)

Furthermore, the Supreme Court expressly rejected Plaintiff's argument that Defendants should have simply replaced the linear GBCA products with macrocyclic GBCA products in *Bartlett*, 570 U.S. 488 ("We reject this 'stop-selling' rationale as incompatible with our preemption jurisprudence. Our pre-emption cases presume that an actor seeking to satisfy both his federal and state-law obligations is not required to cease acting altogether in order to avoid liability"); *see also Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 295 (6th Cir. 2015) (explaining that the *Bartlett* court "explicitly rejected the lower court's conclusion that the defendant could have complied with both state and federal law by simply exiting the market[.]").

As for Plaintiff's argument regarding the magistrate judge's application of the Restatement (Third) of Torts § 6(c), the R&R finds that § 6(c) applies to Plaintiff's design defect claims but that Defendants' duties with respect to product design apply only to foreseeable risks of harm under that section. (Doc. 57 at 13, 15.)

§ 6(c) states:

A prescription drug or medical device is not reasonably safe due to defective design if the foreseeable risks of harm posed by the drug or medical device are sufficiently great in relation to its foreseeable therapeutic benefits that reasonable health care providers, knowing of such foreseeable risks and therapeutic benefits, would not prescribe the drug or medical device for any class of patients.

The commentary to the Restatement provides that "[d]uties concerning the design and marketing of prescription drugs and medical devices arise only with respect to risks of harm that are reasonably foreseeable at the time of sale." The R&R addresses Plaintiff's claims of foreseeability and finds that they are conclusory and are contradicted by factual allegations in the Amended Complaint or its exhibits. (Doc. 57 at 15-16.) The Court finds that the record before it provides no basis for a reasonable inference that the alleged risks posed by the linear GBCA agents to patients with normal kidney function were foreseeable. Because the linear GBCA products posed no reasonably foreseeable risks of harm to patients with normal kidney function, § 6(c) does not provide a basis for Plaintiff's design defect claim. Even if Plaintiff could show that the risks of harm were reasonably foreseeable and that § 6(c) did apply, the Court would find that Plaintiff's design defect claims fail due to preemption. (*See* Doc. 57 at 11-14.)

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

The Court has reviewed Judge Lynette C. Kimmins's Report and Recommendation, the parties' briefs, and the record. The Court finds no error in Judge Lynette C. Kimmins's Report and Recommendation.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 57) is **accepted and adopted in full**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections (Doc. 58) are **overruled**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss (Docs. 46, 47, 48) are **granted**. Plaintiff is granted leave to amend the Amended Complaint (Doc. 35) consistent with the parameters set forth in the Report and Recommendation.

Dated this 26th day of March, 2020.

_____
Honorable Rosemary Márquez
United States District Judge